3013008

FILED

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

15 JUN 25  PM 1: 30

---

**MARIO L. SIMS, and TIFFINY SIMS,**
                **Plaintiffs**


                **vs.**


**NEW PENN FINANCIAL LLC dba under its assumed name**
**SHELLPOINT MORTGAGE SERVICING**
                **Defendant**

---

|
| **COMPLAINT IN**
| **CIVIL ACTION**
|
|
|
| No. 3:15-cv-263
|
|
|
|

**VERIFIED COMPLAINT FOR VIOLATIONS OF THE INDIANA DECEPTIVE**
**CONSUMER SALES ACT, FAIR DEBT COLLECTION PRACTICES ACT, FRAUD,**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,**
**NEGLIGENCE, BREACH OF SETTLEMENT AGREEMENT, VIOLATION OF RIGHT**
**TO PRIVACY, DECLARATORY AND INJUNCTIVE RELIEF AND RELATED CLAIMS;**

**JURY DEMANDED:**

Plaintiffs Mario Sims and Tiffiny Sims, pursuant to the Fair Debt Collection Practices

Act, Indiana law, and Ind. Code § 24-5-0.5-4  hereby alleges as follows:

## I.  PARTIES

1.   New Penn Financial LLC is a Plymouth Meeting, Pennsylvania based entity that

conducts business in Indiana under the assumed name, Shellpoint Mortgage

Servicing, at all times relevant to this matter.

2.  Pastor Mario Sims and Tiffiny Sims reside at 23778 Grove Street, South Bend, St.

Joseph County Indiana.

1

## II. GENERAL ALLEGATIONS

3.   Mario and Tiffiny Sims, reached an agreement with the then mortgage servicer for Bank of New York Mellon, Resurgent[1] and the mortagee John Tiffany to assume the remaining balance on the home at 23778 Grove Street, South Bend, Indiana.

4.   According to the agreement, the parties agreed to allow the Sims to apply to assume the mortgage on said property.

5.   In November of 2008, Pastor Mario Sims and his wife Tiffiny Sims ("Sims) entered into a land contract to purchase a home for them to reside in at 23778 Grove Street South Bend Indiana from a Indiana licensed Realtor John Tiffany ("Tiffany") for $180,000.00. The land contract called for the Sims to put $12,000.00 down and making monthly payments of $1,400.00. (See attached Group Exhibit 1 which is a copy of the signed land contract, and receipts totalling $26,000.00 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

6.   After putting the $12,000.00 down and making timely monthly payments of $1,400 beginning January 1, 2009, the Sims discovered in December of 2009, that Tiffany had not used the $26,000.00 ($12,000 down payment and $14,000 timely monthly payments) paid to him by the Sims to pay his mortgage on the property that was held by Bank of New York, and serviced by Resurgent.

---

1   Resurgent was purchased by NEW PENN FINANCIAL LLC dba under its asssumed name SHELLPOINT MORTGAGE SERVICING sometime in 2014.

7. An agreement was reached by Tiffany and Resurgent to allow the Sims to apply for an assumption of the home with Resurgent. (See attached Group Exhibit #2). Tiffany also provided the Sims with a Quit Claim Deed and Sales Contract for the property.(See Group Exhibit #3 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

8. The Sims also filed a complaint against Tiffany with the Indiana Attorney General. This resulted in an Order showing he defrauded the Sims of the $26,000, $32,000 in legal fees to attorneys to save the home since his foreclosure began in 2009, and improvements to the home in excess of $22,300.00.(See Exhibit #4 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading, with the intent to be considered to be a part of, read with and supporting this pleading).

9. On December 10, 2014, *four years after* the parties had agreed for the Sims' to apply for an assumption of Tiffany's mortgage on 23778 Grove Street with Resurgent now New Penn Financial LLC dba under its asssumed name Shellpoint Mortgage Servicing ("Shellpoint"), Shellpoint provided the assumption paper work to the Sims. The Sims had for four years attempted to get the paperwork to begin the assumption process to no avail from Resurgent. (See Exhibit 5 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND

PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

10. The Sims immediately completed and submitted the paperwork to Shellpoint via fax and email (See Group Exhibit 6 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

11. Further, as a Sheriff's sale was set for January 8, 2015, on January 6, 2015, Johnny Ulmer, Attorney for the Sims, sent a letter to Shellpoint's attorneys requesting the Sheriff Sale be cancelled pending the completion of the assumption process. (See attached   Exhibit 7). The Sims' also filed a complaint with the Consumer Financial Protection Bureau Case Number 150106-000711 requesting Shellpoint to cancel the Sheriff sale and process the assumption. (See Exhibit 8 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

12. The Sheriff sales was initially postponed, then on March 6, 2015, cancelled (See Exhibit 8 attached to APPLICATION FOR TEMPORARY RESTRAINING

13. ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read

4

with and supporting this pleading).

14. On January 30, 2015, Johnny Cano, Escalations Department acknowledged the foreclosure was on hold.

15. Shellpoint responded to the Sims complaint with the Consumer Financial Protection Bureau Case Number 150106-000711 on March 6, 2015, stating additional documentation was needed to process the assumption (See attached Exhibit 9). On March 6, 2015, the Sims attorney sent a letter responding to Shellpoint's letter. (See Exhibit 10 attached to APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and incorporated by reference throughout this pleading. With the intent to be considered to be a part of, read with and supporting this pleading).

16. In June of 2015, the Sims again received a notice of sheriff sale, this time set for July 23, 2015. After not hearing anything from Shellpoint via email, telephone or fax although all three had been provided by the Sims to Shellpoint along with their attorney's contact information, Mario Sims spoke via telephone to Joel Fowler, Supervisor of Shellpoint who indicated that additional documentation was needed and to provide it to K'tia Cox of Shellpoint.

17. The Sims, on June 9, 2015, again, now for the third time since December 10, 2014, provided all the requested documentation to K'tia Cox at the email and fax number provided by Joel Fowler.

18. When the Sims' followed up my telephone to Ms. Cox, they were told that their

assumption file was handled now by Ruby Fowler, Shellpoint.

19. Since June 9, 2015, the Sims have been hung-up on by Craig of Shellpoint when they called to request status, told they did not have authorization to speak with Shellpoint about the asssumption, directed to call Joel Fowler, and Ruby Fielder. When Joel Fowler, and Ruby Fielder were contacted by the Sims by phone, the Sims received voice mail messages that both would return their calls with in 24 business hours, yet weeks have gone by and no call, fax, email, letter or communication was received from Joel Fowler, and Ruby Fielder.

20. On June 9, 2015 the Sims again filed another with the Consumer Financial Protection Bureau Case Number 150609-001222. In its June 24, 2015  response, Shellpoint claims it is unable to cancell the sheriff sale because the mortgage is delinquent, " Shellpoint does not allow third party assumptions on loans reflecting a delinquent status."

21. Prior to receiving the response on June 24, 2015, the Sims called Shellpoint for an update and were told by Kenyatta Harris at 12:58 ET the Sims were not authorized to discuss the assumption, then at 1:00 ET the Sims attempted to contact Ruby Fielder again and received her voice mail stating she would be out of the office until June 19th but would return call within 24 business hours,  the Sims attempted to contact Joel Fowler  again and received his voice mail stating he would be out of the office until June 19th but would return call within 24 business hours, and finally at 1:25 ET reached Luanna Laura who accessed the assumption file and stated that the 4506T document was deficient and was

6

holding up the assumption. The 4506T was immediately faxed to Ruby Fielder per Luanna Laura instruction. An hour later the Sims' received Shellpoint's response to their June 9, 2015 complaint filed with the Consumer Financial Protection Bureau Case Number 150609-001222.

22. Sims have been informed by attorneys for New Penn Financial LLC dba under its asssumed name Shellpoint Mortgage Servicing that a sheriff's sale is eminent. See attached Notice of Sheriff Sale.

23. Plaintiffs have completed and submitted the assumption paperwork provided to them by New Penn Financial LLC dba under its asssumed name Shellpoint Mortgage Servicing ("Shellpoint") on three seperate ocassions beginning in December 2014, via fax and email only to have Shellpoint engage in delay, fraud, deceptive business practices.

24. Plaintffs have provided personal private financial information including bank records and tax returns, spent over $76,000.00 in monthly payments, downpayments, improvements and legal fees believing they could assme the mortgage, and have been given different amounts owed on the mortgage ranging from $126,000 to lessor amounts by Shellpoint employees.

### III. JURISDICTION

25. Plaintiffs aver on information and belief, and upon reasonable investigation and research that the United States District Federal Court of the Northern District of Indiana has jurisdiction in this matter.

26. There is diversity of citizenship and the Federal District court has jurisdiction by statute under: 18 USC 1964(a), 28 USC 1331, 28 USC 1332, and 28 USC 1339.

27. Based on the preceding, the allegations contained herein constitute a matter which affects Interstate Commerce, and presents a condition of "complete diversity of citizenship"; the matter, therefore, falls within Federal Jurisdiction.

28. The amount of controversy well exceeds the statutory sum of $75,000.

## IV. VENUE

29. The United States District Federal Court of Northern District of Indiana is the only appropriate venue in this matter: Any change of venue to a different district, for whatever reason, would cause such economic hardship, physical distress and possible physical injury to plaintiffs so that this case could not be litigated, and would negate, utterly, the pursuit of justice.

## COUNT ONE– FRAUD OR MISREPRESENTATION

30. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

31. Shellpoint engaged in a pattern and practice of defrauding the Plaintiffs in that they delayed four years in providing the assumption paperwork allowing the Plaintiffs to make improvements to increase the value of the home based upon that fraudulent representation, the Sims entered into a settlement agreement.

32. Shellpoint concealed material facts known to them but not to the Sims with intent to defraud them.

33. Shellpoint made the above referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce the Sims to enter a settlement agrement to assume the mortgage resulting in thousands spent on improvements and costs.

34. Plaintiffs were unaware of the true facts.

35. As a result of the Defendant's fraudulent conduct,the Sims suffered compensatory general and special damages in an amount to proof.

## COUNT TWO – BREACH OF SETTLEMENT AGREEMENT

36. Plaintiff's incorporates herein by reference the allegations made in paragraphs 1 through 24 inclusive, as though fully set forth herein.

37. Shellpoint breached the above referenced agreement with the Sims to assume the mortgage and as a proximate result, the Plaintiffs, who is are U.S. Taxpayers, have suffered compensatory damages in an amount to be proven at trial.

## COUNT THREE - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

39. Indiana law implies a covenant of good faith and fair dealing in between parties entered into in the State.

40. As a result of the actions of defendant, set forth herein above, said defendants have violated the implied covenant of good faith and fair dealing and as a result thereof, Plaintiffs are entitled to damages as prayed.

9

41. The actions of said defendant is a violation of said implied covenant of good faith and fair dealing have caused the Plaintiffs to suffer damages in an amount subject to proof.

## COUNT FOUR – NEGLIGENCE

42. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

43. At all times relevant herein, Shellpoint had a duty to exercise reasonable care and skill to maintain proper control and breached their duty of care and skill to the Plaintiffs caused the Plaintiffs to suffer damages in an amount subject to proof.

## COUNT FIVE – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

44. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

45. The transactions referred to above are defined as a "consumer transactions" as defined by Indiana Code § 24-5- et seq.

46. Shellpoint is a "supplier" as  as defined by Indiana Code § 24-5- et seq.

47. The wrongful acts and omissions, deceptive practices, violations of Indiana Law and  violations of the FDCPA referenced in the above paragraphs constitute deceptive acts pursuant to Indiana Code § 24-5-15-11.

48. By respresenting to the Sims, as consumers, that Shellpoint would allow them to apply for an assumption of the delinquent mortgage, when it had no intent on allowing the assumption, Shellpoint violated the Deceptive Consumer Sales Act,

10

Indiana Code.

## COUNT SIX - KNOWING AND INTENTIONAL VIOLATIONS OF THE INDIANA OF THE DECEPTIVE CONSUMER SALES ACT

49. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

50. The misrepresentations and deceptive acts set forth above were committed by the Defendant with knowledge and intent to deceive.

## COUNT SEVEN – NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

52. Shellpoint, acted intentionally or recklessly.

53. Shellpoint, conduct was extreme and outrageous.

54. Shellpoint, conduct caused the Plaintiffs severe emotional distress.

55. The conduct of Shellpoint, caused Plaintiffs to suffer general and special damages in an amount to be proven at trial.

## COUNT EIGHT – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACTS

56. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

57. In numerous instances, as shown above Defendant, directly or indirectly, has used false representations concerning the character, amount, or legal status of a debt, in

violation of Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A).

58. The plaintiff have been the object of collection activity arising from a consumer debt; Shellpoint, the defendant is a debt collector as defined by the FDCPA; and the defendant has engaged in an act or omission prohibited by the FDCPA.

59. The conduct of Shellpoint, caused Plaintiffs to suffer damages in the amount of $185,000.00, trebled by statute.

## COUNT NINE – VIOLATIONS OF THE
## <u>RIGHT TO PRIVACY</u>

60. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 24, inclusive, as though fully set forth herein.

61. By soliciting Plaintiffs financial records under the pretext of reviewing a loan assumption which Shellpoints letter of June 24, 2015, in response to the Sims' complaint, showed was unavailable from the beginning, amounts to a violation of the Sims' right to privacy.

62. The false representation that a assumption was possible deceived the Sims into discouraging personal records including tax returns, bank records and other financial records that they would not have otherwise released to the public.

63. The fraudulent conduct of Shellpoint, caused Plaintiffs to suffer damages in the amount of $185,000.00, trebled by statute.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendant, as follows:

1. For compensatory, special, general damages in the amount of $185,000.00, and punitive damages according to proof against Defendant;

2. For treble damages (a) as allowed by IDCSA as one Plaintiff Mario Sims is over 60, and (b) as allowed by the FDCPA;

3. For reasonable cost of the suit and such other further relief as the Court deems proper;

4. For a TRO of the sheriff sale scheduled July 23, 2015, to be made permanent after hearing;

5. For civil penalties pursuant to statute, restitution, and reasonable attorneys fees according to proof.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable to a jury lawfully convened.

## LIST OF EXHIBITS

Pursuant to 18 U.S.C. 1961(9), Plaintiff now formally incorporates the exhibits attached to their APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION as if set forth fully here.

Respectfully submitted by:

Pastor Mario L. Sims
23778 Grove Street
South Bend, IN 46628

Tiffiny Sims
23778 Grove Street
South Bend, IN 46628

14

## VERIFICATION

We, the Plaintiffs in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, that the above statement of facts and laws are true and correct, according to the best of our current information, knowledge, and belief, pursuant to 28 U.S.C. 1746(1).

Pastor Mario L. Sims
23778 Grove Street
South Bend, IN 46628

Tiffiny Sims
23778 Grove Street
South Bend, IN 46628

15