UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARIO L. SIMS and TIFFINY SIMS | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:15-CV-263 JD |
| | ) |
| NEW PENN FINANCIAL LLC dba | ) |
| SHELLPOINT MORTGAGE SERVICING | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiffs Mario Sims and Tiffiny Sims filed a *pro se* complaint against Defendant New Penn Financial, LLC, which services the mortgage on a home located at 23778 Grove Street, South Bend Indiana (the House), where the Simses live. [DE 1]. The Complaint was accompanied by an "Application for Temporary Restraining Order and Preliminary Injunction," which seeks to enjoin the July 23, 2015 sheriff's sale of that House. [DE 2]. Due to the presence of a petition for a temporary restraining order, this case has been temporarily assigned to the undersigned, consistent with the Court's General Order 2014-7. Service of the petition for a temporary restraining order does not yet appear to have been made on the Defendant and the Defendant has not appeared. Having reviewed the materials filed by the Simses, the Court **DENIES** the petition for a temporary restraining order [DE 2] for the reasons stated below.

## BACKGROUND

The Plaintiffs purchased the House from John Tiffany, an Indiana-licensed realtor, in November 2008. [DE 2 at 1]. Tiffany owned the House, but it was subject to a mortgage (the Mortgage) owned by The Bank of New York (now known as The Bank of New York Mellon).

[DE 2 at 2.] This arrangement was contemplated by the Contract for Sale of Real Estate (the Contract) between the Plaintiffs and Tiffany, which permitted the Seller to obtain a mortgage on the House. [DE 2-1 at 5]. But Tiffany did not apply the money he received from the Simses under the Contract to the Mortgage, and the bank initiated proceedings to foreclose on the House. [DE 2 at 2].

Consequently, the Simses filed a complaint against Tiffany with the Indiana Attorney General, which led to proceedings before the Indiana Real Estate Commission. The Commission found (by way of a settlement agreement) that Tiffany had committed various professional conduct violations, including "engaging in fraud or material deception in the course of professional services or activities by accepting monthly payments on the land contract from Sims and failing to apply those payments to Respondent's mortgage amount." [DE 2-1 at 23].

The Simses also reached an agreement with Tiffany and Resurgent Mortgage Servicing (which serviced the Mortgage until 2014, when the Defendant became the servicer) to allow the Simses to apply to assume the mortgage on the House. [DE 2 at 2]. To further that process, Tiffany's attorney drafted a letter to the Mortgage servicer indicating Tiffany's support for the Simses' assumption of the Mortgage. [DE 2-1 at 13]. Tiffany also provided the Simses with a quitclaim deed to the House. [DE 2-1 at 11].

But when the Simses attempted to assume the Mortgage from Tiffany, they encountered considerable difficulty. Despite submitting all documentation requested by the Defendant[1] on three occasions, they were unable to complete the mortgage assumption process. [DE 2 at 3]. When they tried to call the Defendant to work through these problems, they ran into a wall of

---

[1] It appears that at least some of the conduct that is the subject of Plaintiffs' complaint was committed by Resurgent Mortgage Servicing, not the Defendant. The Plaintiffs have not addressed the relationship between these two entities, or if the Defendant is liable for any or all of Resurgent's past conduct with regard to the Mortgage.

unreturned calls, hang-ups and dead-end transfers.  [DE 2 at 2-4].  Consequently, the Plaintiffs filed two complaints against the Defendant with the Consumer Financial Protection Bureau.  The Defendant responded to the first complaint by contesting the Plaintiffs' assertion that they had provided all documentation required to process the assumption.  [DE 2 at 3].  It responded to the second complaint by indicating that the Mortgage was delinquent, and that the Defendant does not allow the assumption of delinquent mortgages.  [DE 2 at 4].  The Simses then filed this case.  It asserts nine claims, all apparently resulting from the Defendant's handling of the Simses' attempt to assume the Mortgage.  [DE 1].

To date, the Simses have been unable to assume the Mortgage, and the House is slated for sale at a Sheriff's auction on July 23, 2015.  [DE 2 at 1].  The Plaintiffs now request a TRO barring that sale.

**DISCUSSION**

*A. Subject Matter Jurisdiction*

While the Simses' complaint asserts that the Court has diversity jurisdiction over this matter, it does not allege the citizenship of any party.  Where, as here, a party is a limited liability company (LLC), the citizenship of the LLC is the citizenship of each of its members.  *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007).  So, the Plaintiffs' complaint ought to allege both the members of the Defendant LLC and the state(s) of their citizenship.  It alleges neither.  Nor does the complaint allege the citizenship of the Plaintiffs, which is not equivalent to their residency.  *See Id.*  So, the Court cannot conclude that it has diversity jurisdiction over this action based on the facts pled.

Nevertheless, one of the Plaintiffs' claims arises under a federal law: the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Accordingly, the Plaintiffs' complaint raises a question of federal law, and jurisdiction is proper under 28 U.S.C. § 1331. Furthermore, Plaintiffs' FDCPA claim and its other claims appear to be part of a common case or controversy, as they all arise from the Defendant's refusal to permit the Simses to assume the Mortgage. Accordingly, this Court has supplemental jurisdiction over the non-FDCPA claims in this case. *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008). With subject matter jurisdiction aside, the Court turns to the merits of the Plaintiffs' petition for a temporary restraining order and preliminary injunction.

*B. Plaintiffs' Petition for a Temporary Restraining Order and Preliminary Injunction*

The standard for determining whether a temporary restraining order is appropriate is analogous to the standard applicable when determining whether preliminary injunctive relief is appropriate. *See YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000). The party seeking the temporary restraining order bears the burden of showing that it is "reasonably likely to succeed on the merits[,] is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004) (stating the standard for a preliminary injunction). If Plaintiffs meet this threshold, the court "weighs the factors against one another in a sliding scale analysis . . . to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

The Court does not find that this standard has been met in this case. First, the Simses do not appear likely to succeed on the merits. Their complaint asserts a hodgepodge of different causes of action, which suffer from a variety of defects. The first claim (fraud) is not pled with particularity as required by Federal Rule of Civil Procedure 9(b). The second claim (breach of settlement agreement) asserts that the Defendant breached a settlement agreement, but does not attach or otherwise clearly outline any agreement to which the Defendant is a party. The third claim (breach of the implied covenant of good faith), fourth claim (negligence) and seventh claim (negligent or intentional infliction of emotional distress) are not clearly pled, and appear unsupported by the Plaintiffs' factual allegations. The fifth claim (violation of the Indiana Deceptive Consumer Sales Act), sixth claim (knowing and intentional violation of the Indiana Deceptive Consumer Sales Act) and eighth claim (violation of the FDCPA) do not outline how the Indiana Deceptive Consumer Sales Act and the Fair Debt Collection Practices Act apply to Plaintiffs do not appear to be acting as debtors in this context. Finally, the ninth claim (violation of the right to privacy) is vague, and to the extent it asserts a violation of the Fourth Amendment, does not appear to implicate a state actor.

Next, it appears that issuance of a temporary restraining order is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine precludes federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Although the Plaintiffs do not devote significant discussion to the state foreclosure proceedings in this matter, the evidence that they attach shows that a sheriff's sale has been

scheduled for July 23, 2015. [DE 2-1 at 51]. Under Indiana law, a sheriff's sale is only scheduled after the entry of a "judgment of foreclosure." *See* Ind. Code §§ 32-30-10-5; 32-30-10-8. The Plaintiffs' suit in this Court, at least as far as it attempts to enjoin the sheriff's sale, is an attempt to relitigate the merits of the underlying foreclosure action. This Court lacks the jurisdiction to do so. *See Mack v. Am. Nat. Bank of Beaver Dam*, No. 10-cv-557, 2010 WL 4365526, at *2–3 (W.D. Wis. Oct. 27, 2010) (denying temporary restraining order in similar case on *Rooker-Feldman* grounds).

Finally, Federal Rule of Civil Procedure 65(b)(1)(B) requires that—before a temporary restraining order may issue without written or oral notice to the adverse party—"the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Although this rule applies on its face to attorneys only, courts across the country have held *pro se* litigants who seek a temporary restraining order to the same requirement. *See, e.g.*, *Duncan v. Quinn*, No. 14-CV-01167-MJR, 2014 WL 5543961, at *2 (S.D. Ill. Nov. 3, 2014); *Lescs v. Berkeley Cnty. Sheriffs Office*, No. 3:14-cv-96, 2014 WL 4802057, at *2 (N.D. W. Va. Sept. 23, 2014); *Science Sys. & Apps., Inc. v. United States*, No. PWG-14-2212, 2014 WL 3672908, at *3 (D. Md. July 22, 2014).

Here there is no indication that the Defendant has been notified of the Plaintiff's petition for a temporary restraining order. The Plaintiffs' petition attaches a signed statement of proof of service. [DE 2 at 8]. However, this statement—which indicates that the Plaintiffs served the Defendant with the complaint and summons in this matter—was filed before the clerk entered the summons on the docket. [DE 2 at 8; DE 3]. Furthermore, it does not indicate that the Plaintiffs provided the Defendants with notice of their petition, that the Plaintiffs made any efforts to give such notice, or why such notice should not be required. Thus, the Plaintiffs'

6

request for a temporary restraining order does not comply with Rule 65(b)(1)(B), further justifying denial of the petition on the current record.

The Court is sympathetic to the circumstances faced by the Plaintiffs. However, the standards for issuance of a temporary restraining order have not been met here. Accordingly, the "Application for Temporary Restraining Order and Preliminary Injunction" [DE 2] is **DENIED**.

SO ORDERED.

ENTERED: July 1, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court